UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | DOCKET NO. 3:95 CR 31 / 3 - MOC |
| | ) | |
| | ) | |
| vs. | ) | RULE 35 MOTION |
| | ) | |
| 3) CEDRIC LAMONT DEAN | ) | |

    NOW COMES the United States of America, by and through R. Andrew Murray, United States Attorney for the Western District of North Carolina, and hereby moves this Court to reduce the sentence of CEDRIC LAMONT DEAN, pursuant to Rule 35(b), Federal Rules of Criminal Procedure (FRCrP). In support of this Motion, the government shows unto the Court the following:

    1.    Dean was indicted, along with five co-defendants, on or about February 15, 1995, for Conspiracy to Possess with Intent to Distribute a Controlled Substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 846, as well as firearms offenses in violation of Title 18, United States Code, Section 924(c). Dean was sentenced to life in prison for the drug-trafficking offenses and to a consecutive term of 60 months in prison for the § 924(c) offense.

    2.    Thereafter, as a result of amendments to Sentencing Guidelines § 2D1.1 and in accordance with 18 U.S.C. § 3582(c)(2), Dean's sentence for his drug-trafficking offenses was reduced to 232 months in prison, with the most recent reduction effective September 16, 2015. The Court's Order noted that with the reduction, Dean's aggregate sentence was reduced to 292 months in prison.

    3.    Since the imposition of his sentence the defendant has assisted the Eastern District of Missouri. Specifically, in the investigation and prosecution of James Clay Waller, II.

According to the facts in the record in Waller's case in EDMS (1:16 CR 00058-AGF), James Clay Waller, II had verbally and physically abused his wife Jacque repeatedly over their 17-year marriage. He threatened her that if she ever filed for divorce, she would be signing her death warrant. Jacque Sue Waller was an outgoing, beautiful, loving and caring woman with five year old triplets. The Wallers separated in 2010 and eventually Jacque got up the nerve to contact a divorce attorney and arrange for her and her husband to meet with the attorney at 3:00 p.m. on June 1, 2011. The day before the meeting, Waller dug Jacque's grave in a deserted area along the Illinois river bank near an area known as Devil's Island. Following the meeting with the divorce attorney, Waller lured Jacque back to his residence in Jackson, Missouri, allegedly for the purpose of picking up their son, but the child wasn't there. Once inside the residence, Waller brutally murdered Jacque, beating and strangling her to death, then stuffing her body in a trash can and putting it in the back of his truck. He then drove to a meeting with his girlfriend and his son, with his son's mother's body still in the back of the truck. As evidence would later reveal, Waller then transported Jacque's body by boat across the Mississippi River and buried her in the grave he had dug the day before. Waller had strategically picked this location to ensure the body would never be found.

Following the murder, Waller, who had previously served for a short time as a deputy sheriff, attempted to clean the residence, and remove any evidence of the crime. But, during a four day search of the residence, officers recovered traces of Jacque's blood throughout a hallway. It was also discovered that a long carpet runner had been removed from the floor in the hallway. In a crawl space underneath the house, officers recovered the missing piece of carpet, saturated with Jacque's blood.

Jacque's disappearance brought an outpouring of community support and outrage, that

was unparalleled in the history of Southeast Missouri. Hundreds of volunteers searched with determination for the next ten months in an effort to find Jacque's body. Jacque's disappearance gained not only local, but national attention and was the subject of numerous national news programs.

On July 26, 2011, while the efforts were ongoing to find Jacque's body, Waller sent a threatening communication over the internet, threatening to kill Jacque's sister, whom the courts had entrusted with the care of the Waller children. Waller was charged in federal court with making an interstate threat of violence. Waller was arrested and ordered held without bond. Waller eventually pled guilty and on January 3, 2012, he received a sentence of five years in the Federal Bureau of Prisons, the statutory maximum.

On April 23, 2012, after months of exhaustive and unproductive efforts to locate Jacque's body, the Cape Girardeau County Prosecuting Attorney's Office charged Waller with Murder in the First Degree, punishable by life imprisonment without parole. Waller subsequently used his "bargaining chip" and offered to disclose the location of the body he had so carefully hidden, in exchange for a 20-year sentence, concurrent with the five-year sentence he had received in the Bureau of Prisons for threatening Jacque's sister. Waller would in essence be serving an additional 15-year sentence for this murder. Jacque's family was grief-stricken at their loss and consumed by the fact they had no final resting place for Jacque. They were especially concerned about the effect on the triplets of never having recovered their mother's body, as well as their own need to see that their daughter was properly put to rest. Jacque's parents asked the Cape Girardeau County Prosecuting Attorney's Office to accept this plea agreement.

The plea offer was accepted, Waller disclosed the location of the body, and after five

days of searching, authorities were able to recover Jacque's body. On June 6, 2013, Waller pled guilty to Second Degree Murder and received the agreed upon 20 year sentence.

The United States Attorney's Office then began to review the thousands of pages of investigative reports and information associated with the case. Initially, it did not appear the federal government had jurisdiction, because Jacque was not alive at the time she was transported across the Mississippi River, therefore federal kidnapping charges could not be filed. However, in the course of the investigation, it was discovered that Waller had spent the night before the murder at the residence of his girlfriend in Illinois. Therefore, when he traveled to Missouri to attend the meeting with the divorce attorney, he traveled in interstate commerce with the intent to commit assault upon a domestic partner, constituting the offense of Interstate Domestic Violence in violation of 18 U.S.C. § 2261(a).

Waller's prison cellmates were contacted throughout the Bureau of Prisons and several gave statements that Waller had admitted the details of the murder, including digging the grave the day before. It was reported that Waller had authored a manuscript while in prison. Through efforts of the grand jury, a copy of the manuscript was located in the possession of Linda Perry in Baton Rouge, Louisiana. Mrs. Perry was not cooperative and a most reluctant witness. She claimed she had been sent a hand written version of the manuscript through the mail, which she edited. The book was entitled, "If You Take My Kids, I'll Kill You, a Confession of Missouri's Most Notorious Wife Killer." The book detailed Jacque Waller's murder including Waller's digging of her grave the day before. Mrs. Perry denied authoring the book. Information was obtained that the book may have actually been written by inmate Cedric Dean.

An application for a Petite Waiver was filed with the Department of Justice and on May 17, 2016 the Deputy Attorney General authorized Waller's prosecution for Interstate Domestic

Violence. On May 19, 2016, Waller was indicted. On August 1, 2016, FBI agents interviewed Cedric Lamont Dean at the Federal Correctional Institution in Elkton, Ohio. Mr. Dean advised authorities he had in fact written the manuscript in consultation with Waller, at Waller's request. Dean stated Waller told him every factual matter contained in the book and that Waller reviewed and approved the entire contents of the book. On October 11, 2016, AUSA Larry Ferrell, along with FBI Agent Brian Ritter, met with Mr. Dean. Mr. Dean affirmed the information previously provided. AUSA Ferrell reported to the undersigned that he found Mr. Dean to be most pleasant, fully cooperative, truthful, and frankly, quite impressive. He agreed he would testify if requested and would cooperate fully with authorities in the event of a trial. To his credit, no consideration was demanded and none was promised.

After filing extensive pre-trial motions, during which time Mr. Dean's cooperation and testimony was made known to the defendant, Waller decided to waive motions and pled guilty to the charge of Interstate Domestic Violence on October 16, 2017. In a binding plea agreement the parties agreed he would receive a sentence of 420 months in the Federal Bureau of Prisons. His sentencing is set for January 16, 2017.

Mr. Dean's cooperation was of great assistance to the government in obtaining Waller's conviction. Mr. Dean was the key witness who could authenticate Waller's recantation of the facts of the murder as they appeared in the manuscript. Mr. Dean's willingness to testify, and his damaging testimony, no doubt was a significant factor in Waller's decision to plead guilty.

4. The Government would request that the court entertain this motion in the interest of furthering criminal investigations and rewarding a defendant who has assisted the Government in a meaningful way.

WHEREFORE, the government prays that the sentence of CEDRIC LAMONT DEAN be reduced based on his substantial assistance to a term of credit for time served, and that the matter be resolved by Order of the Court without the benefit of a hearing or oral argument.

Respectfully submitted, this 27th day of November, 2017.

          R. ANDREW MURRAY
          UNITED STATES ATTORNEY

          S/ *Jill Westmoreland Rose*
          JILL WESTMORELAND ROSE
          ASSISTANT UNITED STATES ATTORNEY
          227 West Trade Street
          Charlotte, North Carolina 28202
          Telephone: (704) 338-3105
          Fax: (703) 227-0197
          E-mail: jill.rose@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on this, the 27th day of November, 2017, the foregoing Motion was duly served upon the defendant herein, through counsel, Claire Rauscher by electronic filing at: Claire.Rauscher@wbd-us.com

          */s Jill Westmoreland Rose*
          JILL WESTMORELAND ROSE
          ASSISTANT UNITED STATES ATTORNEY